**Clayton Lamar ADKISON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–87–078–CR.**

Court of Appeals of Texas, Beaumont.

Nov. 23, 1988.

---

Donald M. Brown, Conroe, for appellant.

Steve Greene, Houston, Michael R. Little, Liberty, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appeal from Revocation of Probation.

Originally, Appellant was charged by indictment with the offense of involuntary manslaughter. The indictment alleged that on August 8, 1980, Adkison, when operating a motor vehicle while intoxicated, and by reason of such intoxication, caused the death of Criss Coats. The Appellant was found guilty by the court and punishment was assessed at confinement for a period of ten years. The confinement was probated immediately. Appellant was given the full benefit of adult probation. There was a fine assessed of $750.00.

The Appellant takes the position, in his brief, that a plea of nolo contendere was made for the Appellant to the manslaughter charge by the Appellant's trial counsel and, therefore, the plea is invalid.

In March of 1986, a petition to revoke probation and to impose sentence was filed. The motion alleged that on or about January 24, 1986, the Appellant violated his probation by driving while intoxicated in Montgomery County. A hearing was held on March 10, 1987, before the 75th District Court of Liberty County. Appellant's probation was revoked. A sentence was pronounced that he be confined for not less than two nor more than ten years. An order revoking probation and imposing sentence was signed and entered.

The Appellant's initial trial in July of 1982 was presided over by a visiting judge. That hearing is the basis for the Appellant's first two points of error. The Appellant in his brief argues:

"Appellant's attorney arguably entered a plea of nolo contendere to the indictment although the Appellant did not."

The Appellant's first point of error is that the judgment and sentence originally entered against Appellant should be set aside and his conviction reversed because the Appellant's plea of "nolo contendere" was not made in open court by the Appellant in person as required by *TEX.CODE CRIM. PROC.ANN. art. 27.13* (Vernon 1966). Appellant's second point of error is akin. This point of error sets forth that no plea of guilty or nolo contendere was made in open court as required by *Article 27.13*.

First, it should be dogmatically stated that the Appellant was in open court in person. The record clearly proves that there was an actual dialogue or colloquy between the visiting judge and the Appellant, himself, in open court.

The record clearly reflects an intelligent and detailed direct dialogue between the visiting judge presiding, the Honorable Fred Hooey, and Clayton Lamar Adkison, having taken place on July 19, 1982. The court asked the Appellant his full name which the Appellant affirmed. The court explained that Appellant was charged with the offense of involuntary manslaughter. The Appellant understood the charge. The court inquired if the Appellant had signed a waiver of his constitutional right to a trial by jury, the right of confrontation of witnesses, and a judicial confession. The court indicated that signed documents reflected Adkison's desire to plead guilty to this offense. Then, the court asked if these waivers, documents and confessions were correct and understood. Mr. Adkison personally answered "Yes."

"THE COURT: Are you asking—Actually guilty as charged?

"MR. ADKINSON [ADKISON]: Yes."

Then, upon further questioning, Adkison affirmed that no one had promised him

anything to get him to plead guilty and that he was not afraid of anybody or anything that induced him to plead guilty. At this late point the trial attorney for the Appellant interjected:

"MR. CUMMINGS: ... [H]e's pleading no contest.

"THE COURT: Well, do you want to plead no contest, nolo contendere. If you plead nolo contendere that is the same thing as if you pled guilty before this Court.

"Do you understand that?

"MR. ADKINSON [ADKISON]: Yes."

Then, for a second time, the court asked, in substance, if the Appellant was afraid of anybody or anything to induce him to enter a nolo contendere plea. The Appellant answered an unequivocal and simple "No." The court then, for a second time, asked also did anyone threaten the Appellant or coerce the Appellant to enter such a plea of nolo contendere. Mr. Adkison's direct answer out of his own mouth was "No."

Then the court asked Adkison if he was entering such a nolo contendere plea because Adkison entertained some kind of elusive hope to obtain a pardon or to receive a light sentence. Again, Adkison's straightforward, personal answer was "No." The court then established that Adkison had never been adjudged insane or had any type of mental problem and, further, that Appellant could read and write the English language. Adkison, unequivocally, personally said that he was satisfied with his trial lawyer's representation.

At that point, the court explained the plea bargain which was that the State intended to recommend ten years' confinement in the State Department of Corrections which would be immediately probated. A fine of $750.00 would be assessed. Adkison said he understood the plea bargain. Then the court unequivocally announced that if the trial court did follow the recommendation, the trial court would not permit an appeal on the part of Adkison or on behalf of Adkison. Adkison said he fully understood that proposition. Adkison also was warned that the court did not have to follow the recommendation.

"THE COURT: Now, you have the right to have this indictment formally presented and formally arraigned and answer guilty or not guilty to it.

"Or you may waive that and your plea of nolo contendere will be entered."

To which the trial attorney for Appellant indicated that that was the manner in which Appellant desired to pursue the matter. The trial counsel stated the Appellant desired to waive the formal reading of the indictment. Then the State entered a signed stipulation of evidence which was sworn to by the Appellant and fully approved by the attorney for Adkison and approved by the court. This stipulation of evidence was State's Exhibit No. 1.

In State's Exhibit No. 1, Clayton Lamar Adkison judicially confessed to the following facts: that on or about August 8, 1980, in Liberty County, Texas, Adkison did then and there, by accident and mistake, when operating a motor vehicle while intoxicated, and by reason of such intoxication, cause the death of one Criss Coats by then and there driving the said motor vehicle of Appellant into, and causing it to collide with, a motor vehicle occupied by Criss Coats. There was no objection to State's Exhibit No. 1 which was admitted into evidence by agreement.

Adkison took the stand and qualified himself for a probated sentence. Adkison said he understood and realized that if the court granted him probation there would be certain terms and conditions that would be set forth in the court's orders and that Adkison would have to live by them. The court followed the State's recommendation. Thereafter, Adkison affirmed that he understood all that had happened in the proceeding. The court specifically admonished and warned the Appellant in this manner:

"Among the other conditions of probation you're not to violate the laws of this State or of the United States or any other state.

"Again, you're not to use alcohol in any form ever again. Beer, whiskey or any other kind of alcohol. You are not to use any kind of drugs or marijuana [marihuana], pills of any kind unless pre-

scribed by a doctor in standing profession. You're to support your dependents and work faithfully at suitable employment."

After reading and analyzing the record made on July 19, 1982, we decide that there was substantial compliance with *TEX. CODE CRIM.PROC.ANN. art. 27.13.* We conclude that the Appellant fully understood the proceedings. There is nothing in the record to indicate that the Appellant was confused. The Appellant, himself, affirmatively and unequivocally, at one point, said that his plea was guilty. The Appellant also affirmatively stated that he understood that a plea of nolo contendere was the same in legal effect as a plea of guilty. *TEX.CODE CRIM.PROC.ANN. art. 27.-02(5)* (Vernon Pamph.Supp.1988). A review and analysis of the record made on July 19, 1982, shows that the same was well within the requirements that are set forth in *Shields v. State,* 608 S.W.2d 924 (Tex.Crim.App.1980). Points of error one and two are overruled.

■ In point of error three the Appellant argues that he was not arraigned and asked whether he was or is "guilty" as required by *TEX.CODE CRIM.PROC. ANN. arts. 26.01, 26.02 and 26.11* (Vernon 1966). We do not agree. Now this record reflects that the trial counsel of the Appellant waived the arraignment on the Appellant's behalf. This waiver is sufficient and permissible. *See Alonzo v. State,* 462 S.W. 2d 603 (Tex.Crim.App.1971). We note from the record as follows:

"THE COURT: Now, you have the right to have this indictment formally presented and formally arraigned and answer guilty or not guilty to it.

"Or you may waive that and your plea of nolo contendere will be entered.

"Is that what you desire, counsel?

"MR. CUMMINGS: Yes, Your Honor.

"We waive the formal reading of the indictment."

■ A second reason exists for our refusal to sustain point of error three. We perceive that the trial counsel for this Appellant had clearly waived the arraignment. But since there was no objection made at

any time concerning any alleged lack of proper arraignment prior to the time of this appeal, any conceivable error connected with the failure to formally arraign the accused was waived. *Mulder v. State,* 707 S.W.2d 908 (Tex.Crim.App.1986); *Richardson v. State,* 508 S.W.2d 380 (Tex.Crim. App.1974).

■ Our record demonstrates lucidly that the court inquired into any promises or threats that were made to or against the Appellant in order to obtain this plea. Also, the Appellant's sanity and education were carefully investigated. Appellant understood the range of punishment, the plea bargain and its consequences. We conclude that the trial court's actions during the taking of this Appellant's plea definitely satisfied the requirements of *TEX. CODE CRIM.PROC.ANN. art. 26.13* (Vernon 1966 & Vernon Pamph.Supp.1988).

We emphasize the trial court, with care, entered into the following dialogue with the Appellant. The direct colloquy between the court and the Appellant was in relevant and significant part:

"THE COURT: *Well, do you want to plead no contest, nolo contendere. If you plead nolo contendere that is the same thing as if you pled guilty before this court.*

"*Do you understand that?*

"MR. ADKINSON [ADKISON]: *Yes.*

"THE COURT: Now, are you afraid of anybody or anything or anybody that promised you anything to get you to enter a *nolo condendere [sic] plea?*

"MR. ADKINSON [ADKISON]: No.

"THE COURT: Anybody threatened you or coerce you to make you enter *such a plea?*

"MR. ADKINSON [ADKISON]: No.

"THE COURT: *Are you entering such a plea* because you have some kind of elusive hope you might get a pardon or light sentence for doing so?

"MR. ADKINSON [ADKISON]: No.

"THE COURT: Have you been adjudged insane or had any mental problems?

"MR. ADKINSON [ADKISON]: No.

"THE COURT: You can read and write the English language?

"MR. ADKINSON [ADKISON]: Yes." (Emphasis added)

The Appellant, Adkison, indicated without equivocation that he understood the nolo contendere plea and that the same was free and voluntary on his part. Hence, we conclude that the trial court's action, the trial court's inquiries and the trial court's dialogue with the Appellant during the taking of the nolo contendere plea, clearly satisfied the requirements of *TEX.CODE CRIM.PROC.ANN. art. 26.13* and *art. 26.- 13(b)* (Vernon 1966 and Vernon Pamph. Supp.1988). Indeed, we conclude that the Appellant was not confused but thoroughly understood the plea of guilty that he made prior to his plea of nolo contendere. This Appellant had not shown that he was confused or that he suffered any prejudice or injury. Neither the Appellant nor his trial counsel made any proper objection during the trial. No complaint is made until this appeal. Therefore, these matters are waived. *Clemmons v. State*, 630 S.W.2d 894 (Tex.App.—Houston [1st Dist.] 1982, no pet.); *Kuyava v. State*, 538 S.W.2d 627 (Tex.Crim.App.1976). Finding no error and finding that points of error numbers three and four cannot be sustained; the same are overruled.

We hold that there was substantial compliance with the admonitions and warning requirements that are set out in *TEX. CODE CRIM.PROC.ANN. art. 26.13*. Point of error five is overruled.

■ In Appellant's point of error number six the argument is advanced that the visiting trial judge, Judge Hooey, committed reversible error by not inquiring into the length of any probation contained in the plea bargain. The Appellant insists, again, that *TEX.CODE CRIM.PROC.ANN. art. 26.13* has been violated. We observe that the record, itself, defeats point of error six.

"THE COURT: I see the State intends to recommend you—I guess there has been some kind of plea bargain between your lawyer and the State, is that correct?

"MR. ADKINSON [ADKISON]: Correct.

"THE COURT: The State intends to recommend ten years confinement in the Texas Department of Corrections and that it be probated and a fine of $750, is that correct?

"MR. ADKINSON [ADKISON]: Yes.

"THE COURT: If I follow this recommendation I will not allow you to appeal this case.

"Do you understand that?

"MR. ADKINSON [ADKISON]: Yes.

"THE COURT: You know I'm not bound to follow the recommendation?

"MR. ADKINSON [ADKISON]: Yes.

Another reference to a plea bargain in the record is as follows:

"THE COURT: Any—What's your recommendation, Mr. Prosecutor?

"MR. WILBORN: Your Honor, the State would recommend ten years confinement in the Texas Department of Corrections. That it will be probated and that Mr. Adkinson [sic] be placed on probation for ten years and $750 fine.

"THE COURT: On your plea of nolo contendere the Court finds you guilty of the offense of involuntary manslaughter of the third degree and upon the recommendation of the State punishment is assessed at ten years confinement in the Texas Department of Corrections and $750 fine. However, upon further recommendation of the State you are not going to be sentenced to the Texas Department of Corrections at this time. You're going to be admitted to the Adult Probation Department. This means you will not have to ever go to the penitentiary if you live up to all the conditions of probation that I give you.

"Have you understood what's happened so far? Have you—How far did you go in school?

"MR. ADKINSON [ADKISON]: 10th grade."

■ We perceive that the parties, both on the part of the state and on the part of the then-defendant knew the terms of the bargain and agreed to it, and that indeed,

the trial court accepted the agreed recommendations and approved the same. We hold the trial judge satisfied the requirements of *TEX.CODE CRIM.PROC.ANN. art. 26.13* (Vernon 1966 and Vernon Pamph.Supp.1988). However, there is a separate and independent reason for overruling point of error number six. The Appellant has simply shown no harm. Point of error six is overruled.

■ Appellant argues in points of error seven and eight that Judge Clarence Cain abused his discretion in revoking the Appellant's probation because the State did not prove that the Appellant was the same person who was convicted in the original proceeding. As a corollary thereto, Judge Cain, Appellant urges, committed reversible error in overruling the Appellant's objection based on a lack of evidence during the revocation proceeding that the Appellant was the same person who was convicted and placed on probation in the involuntary manslaughter offense. Patsy Thompson, who was an Adult Probation Officer, identified the Appellant as the same probationer. Ms. Thompson also served as a supervising officer for the Appellant and she could identify the Appellant as being the same probationer from her past contacts and conversations with him. It is correct to state that she had not been personally in court when Appellant pleaded to the involuntary manslaughter charge involving the death of Criss Coats.

But we think a necessary, fair and reasonable conclusion is to be drawn from certain proceedings in the hearing on the revocation of probation because the Appellant and his own attorney satisfied the necessary proof of identity by the following exchange:

"THE COURT: Next, have the proceeding on the State's Motion and Petition to Revoke Probation and Impose Sentence in Cause No. 13,734, the State of Texas vs. Clayton Lamar Adkinson [sic].

"What says the State?

"MR. GREENE: State's ready.

"THE COURT: Defense ready?

"MR. BROWN: Yes, Your Honor. That's assuming that that is the State's original, there is no amendment, as I understand, being on the ground of 'commit no offense against the laws of this State or any other State of the United States,' and the allegation that he drove while intoxicated. Yes, I'm ready.

"THE COURT: Mr. Greene, that is the petition you're proceeding under, or am I correct. It's the only one I see that's been filed.

"MR. GREENE: Yes, sir.

"MR. BROWN: I didn't have any knowledge of another one, I just wanted to be sure.

"MR. GREENE: Yes, sir, that's correct.

"THE COURT: *Where is your defendant? He's back there?*

"MR. BROWN: *He's here, Your Honor.*

. . . .

"THE COURT: *Read the petition to the defendant.*

"MR. BROWN: *Your Honor, the defendant will waive the formal reading of the motion to revoke probation and enter a plea of not true.*

"THE COURT: *Mr. Adkinson [sic], will you please rise. I want to ask you this: You've heard what your attorney's stated. Do you waive the formal reading of the State's petition to revoke probation and impose sentence in this case and you do enter a plea of not true, is that true?*

"THE DEFENDANT: *Yes, sir.*" (Emphasis added)

This record is similar to other decisional precedents in which the statements of trial counsel and the probationer have been the basis to sustain the State's burden on the issue of identification. *See Riera v. State*, 662 S.W.2d 607 (Tex.Crim.App.1983); *Hogan v. State*, 529 S.W.2d 515 (Tex.Crim. App.1975). There is no evidence at all offered to prove that the Appellant was not the same person who was placed on probation after his plea to the involuntary manslaughter charge. We hold he waived this point. *Hillburn v. State*, 627 S.W.2d 546

(Tex.App.—Amarillo 1982, no pet.). We overrule, at this point, points of error seven and eight.

■ We also make this further observation. There was a separate hearing on the Appellant's motion to be entered into bond pending the appeal. At that subsequent hearing to set the bond, both the Appellant's mother, Tanya Adkison, and his father, R.E. Adkison, testified that the Appellant was the same person who had been placed on probation in the involuntary manslaughter proceeding.

An appellate review, we think, should strive to arrive at the true facts as clearly shown by the record. In *Schwede v. State*, 707 S.W.2d 731 (Tex.App.—Beaumont 1986, no pet.), we held that the defendant, Schwede, by admitting his guilt at the punishment phase of the trial, waived any errors that might have occurred during the guilt/innocent stage. In *Schwede, supra*, the Appellant argued that the evidence was insufficient to show that he, Schwede, intentionally and knowingly killed his wife, as alleged in the indictment. We sustained the conviction on the evidence Schwede gave during the punishment phase, citing the seminal case of *DeGarmo v. State*, 691 S.W.2d 657 (Tex.Crim.App.1985) and *Bodde v. State*, 568 S.W.2d 344 (Tex.Crim.App. 1978). Thus, we decide, as an additional reason for overruling the points of error on identification, that we can and should consider the testimony given by the mother and father of the Appellant at the hearing to set bond.

■ The last point of error is that Judge W.G. Woods, Jr., abused his discretion in denying the Appellant's motion to recuse Judge Clarence D. Cain. There is no merit in this contention. The Appellant argues that Judge Clarence Cain should be disqualified and should be recused because he granted an oral motion for continuance and, secondly, that Judge Cain received a certain letter or communication from Patsy Thompson regarding the alleged violation of probation. There is no showing at all that Judge Cain was disqualified. There is no merit in the contention that he should have been removed by way of recusal under this record because he was entitled to receive the communication from the probation officer. We deem it was in order for Judge Cain to receive this communication to enlighten him as to whether or not to approve the filing of the petition to revoke probation and to issue a warrant for the Appellant's arrest. The trial judge certainly should have concerned himself about the question of probable cause to issue the arrest warrant. It was also correct to hear or receive evidence in a preliminary hearing to determine whether or not the probationer should be held for trial. None of these proceedings either require or indicate that the trial judge should be subject to a successful recusal motion. *Cameron v. Greenhill*, 582 S.W.2d 775 (Tex.1979).

The Appellant has failed to show that Judge Cain had any personal knowledge as to the allegations of violation of probation. In fact, the Appellant has failed to show that Judge Cain had any personal knowledge of the Appellant, himself, prior to the institution of the revocation proceedings. *See Zima v. State*, 553 S.W.2d 378 (Tex. Crim.App.1977); *Chamberlain v. State*, 453 S.W.2d 490 (Tex.Crim.App.1970). Appellant has failed to show any predisposition on the part of Judge Clarence Cain touching upon the alleged violation of probation. No bias or prejudice or prejudging, on the part of Judge Cain, is shown. *See McClenan v. State*, 661 S.W.2d 108 (Tex. Crim.App.1983); *Williams v. State*, 492 S.W.2d 522 (Tex.Crim.App.1973).

This record overwhelmingly and lucidly reflects that Judge Cain was not biased or prejudiced against Appellant Adkison in any manner. Error nine is overruled. After considering all of the points of error brought forward by the Appellant, being nine in number, we overrule each and every one of them. We affirm the judgment and the sentence and the orders of the trial court.

AFFIRMED.

BURGESS, Justice.

I concur in the result, but do not adopt the majority's rationale in overruling points of error seven and eight.

Appellant urges the state did not prove the person in court, *i.e.,* the defendant was

the same person who was previously placed on probation. The state has the burden of proving this fact. *McGowan v. State,* 739 S.W.2d 652 (Tex.App.—Beaumont 1987, pet. ref'd). The majority holds that the announcement by the defendant that he was ready and in the courtroom "satisfied the necessary proof of identity." I disagree. The cases cited by the majority do not stand for the proposition that such an announcement satisfies the evidentiary requirement, but rather that the failure of the defendant to raise the issue of identity at the trial level waives the point at the appellate level. I would overrule the points on this basis.

I do not believe the majority's "further observation" concerning the bond hearing should have any relevance to the identity issue. The majority decides it can and should consider the evidence at the bond hearing relying upon *Schwede v. State,* 707 S.W.2d 731 (Tex.App.—Beaumont 1986, no pet.) and *DeGarmo v. State,* 691 S.W.2d 657 (Tex.Crim.App.1985). Both of these cases, however, stand for the proposition that in reviewing sufficiency of the evidence challenges, a reviewing court can look to both stages of a trial. Here, the majority looks to a separate, ancillary hearing. I do not agree with this extension of *DeGarmo,* and thus, only concur in the overruling of these points.