In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00143-CR


______________________________




DELEON JUAN VANEGAS, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Criminal District Court #1


 Dallas County, Texas


Trial Court No. F-0800368-H




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 The lifeless body of fifteen-year-old Fernando Cortez, Jr., was found by his sixteen-year-old
sister, Ava Bianca Cortez, at the Dallas (1) home of Bianca's nineteen-year-old boyfriend, Deleon Juan
Vanegas, Jr., the morning after a long night during which the three had ingested Xanax and
"cheese"--a dangerous mixture of black tar heroin and Tylenol P.M.--while they had watched
rented movies and had eaten Chinese food. Bianca found Fernando's body lying face up with a white
froth around the mouth and nose. It was determined that Fernando died from a heroin overdose.

 Vanegas was convicted by a jury of knowing delivery of heroin to a minor. The jury also
found Vanegas used or exhibited the heroin as a deadly weapon in commission of the crime. From
a sentence of eighteen years' imprisonment, Vanegas appeals. 

 We reform the trial court's judgment to reflect the correct statutory section and degree for the
offense and, as reformed, affirm the judgment. We reach that result based on the following holdings: 
(1) Vanegas was properly arraigned, (2) sufficient evidence supports the judgment, (3) ineffective
assistance of counsel has not been shown, and (4) the judgment should be reformed to speak the
truth.

(1) Vanegas Was Properly Arraigned

 "In all felony cases, after indictment, . . . there shall be an arraignment." Tex. Code Crim.
Proc. Ann. art. 26.01 (Vernon 2009). The purpose of the arraignment is to identify the defendant
and hear his or her plea. Tex. Code Crim. Proc. Ann. art. 26.02 (Vernon 2009). Although Vanegas
claims he did not enter a plea at arraignment, the record before us establishes otherwise. Vanegas
was first arraigned April 4, 2008, when he pled "not guilty" to all allegations contained within the
indictment. His brief fails to refer to this arraignment. Instead, Vanegas refers to an arraignment
on the same indictment which occurred May 12, 2008, the day before trial. The record reflects that
the trial court read the indictment, advised Vanegas of the range of punishment, and recorded a plea
offer from the State. After receiving responses from counsel that no other pretrial matters needed
to be taken up, the trial court proceeded to voir dire. Vanegas contends that, because the reporter's
record does not reflect he was given the opportunity to plead at the May 12 arraignment, he was
harmed because the failure "deprived him of the opportunity to change his mind and accept the
State's offer before going to trial." (2) After the jury was empaneled and seated, however, the trial court
read the indictment and asked for Vanegas' plea. Again, he pled "not guilty." (3) 

 This point of error is overruled, since Vanegas was properly arraigned April 4, 2008.
Moreover, even had there been any error in the arraignment, it would have been waived since no
objection was asserted below. Adkison v. State, 762 S.W.2d 255, 259 (Tex. App.--Beaumont 1998,
pet. ref'd). 

(2) Sufficient Evidence Supports the Judgment

 Vanegas contends the evidence is legally and factually insufficient to support the
verdict--principally in proving the element of delivery of the controlled substance.

 When conducting a legal sufficiency analysis, we review all of the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could find the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Clewis v. State, 922 S.W.2d 126, 132-33 (Tex. Crim. App. 1996). This standard serves as a tool to
determine whether there is a fact issue at all. Clewis, 922 S.W.2d at 133. In other words, if the
evidence is insufficient under the Jackson standard, we must render a judgment of acquittal. Id.

 If the Jackson standard is met, we may not sit as the thirteenth juror reevaluating the weight
and credibility of the evidence. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
Instead, we must give proper deference to the fact-finder's responsibility to weigh the evidence,
resolve conflicts in the testimony, and draw reasonable inferences from basic facts. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis, 922 S.W.2d at 133; Bottenfield v. State, 77 S.W.3d
349, 354 (Tex. App.--Fort Worth 2002, pet. ref'd) (citing Jackson, 443 U.S. at 319).

 When reviewing for factual sufficiency, we are not free to reweigh the evidence and set aside
a jury verdict merely because we feel a different result is more reasonable. Clewis, 922 S.W.2d at
135. Instead, we give due deference to the jury's determinations and will find the evidence factually
insufficient only when necessary to prevent manifest injustice. Johnson, 23 S.W.3d at 8-9, 12;
Clewis, 922 S.W.2d at 133, 135. Thus, a factual sufficiency review examines the evidence in a
neutral light and determines whether the proof of guilt is obviously weak as to undermine confidence
in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong
and unjust. Johnson, 23 S.W.3d at 11; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997);
Harris v. State, 133 S.W.3d 760, 764 (Tex. App.--Texarkana 2004, pet. ref'd).

 A "person commits an offense if the person knowingly delivers a controlled substance . . .
to a . . . child." Tex. Health & Safety Code Ann. § 481.122 (Vernon 2003). Vanegas contends
he did not knowingly deliver the "cheese" to Fernando. To bolster his argument, he reiterates that
he did not force or coax Fernando into "snorting cheese," but instead merely left it on the plate for
his own use. 

 According to the Texas Controlled Substances Act, to deliver "means to transfer, actually or
constructively, to another a controlled substance . . . regardless of whether there is an agency
relationship." Tex. Health & Safety Code Ann. § 481.002(8) (Vernon Supp. 2008). Actual
delivery consists of transferring or surrendering "the real possession and control of a controlled
substance from one person to another person." Heberling v. State, 834 S.W.2d 350, 354 (Tex. Crim.
App. 1992); see Ex parte Perales, 215 S.W.3d 418, 420 (Tex. Crim. App. 2007). A constructive
transfer can occur by placing the contraband "in a particular location and then advis[ing] the recipient
of this location so that the recipient can retrieve" it. Sims v. State, 117 S.W.3d 267, 268-69 (Tex.
Crim. App. 2003). A single case may involve both actual and constructive transfer. Id. at 270. For
example, a constructive transfer can occur when someone is informed of the contraband's location,
and an actual transfer can occur when the contraband is retrieved. Id.

 After Bianca found Fernando's body and before police arrived, Vanegas fled the scene. 
Vanegas' subsequent voluntary interview by Detective Paul Ellzey, combined with Bianca's
testimony at trial, revealed the events leading up to Fernando's death. Earlier on the night of
Fernando's death, Vanegas had picked up Bianca and his sister, Monique. He drove to a dealer's
home to purchase black tar heroin, picked up Fernando who "was already messed up," and returned
to Monique's home. Monique cut the heroin with Tylenol P.M. to make "cheese." Monique
"snorted" some lines with Vanegas and gave him some "cheese" to take with him. 

 After leaving Monique's home, Vanegas, Bianca, and Fernando rented some movies, picked
up Chinese food, and went to a "dope" house to acquire Xanax and more heroin. Vanegas took two
Xanax pills, while Bianca and Fernando took one and one-half each. When they arrived at Vanegas'
house, they watched movies, ate the Chinese food, and proceeded to "[snort] some cheese." Bianca
and Fernando had never tried "cheese" before, so Vanegas went first and allowed Fernando to use
his straw so that he could "snort cheese." In his interview, Vanegas said he saw Fernando "snort"
two "lines." Bianca also admitted she "snorted" one "line of cheese." In the course of the night,
Vanegas admitted he "snorted" between three and five "lines of cheese." He had intended to cut the
newly purchased heroin, acquired after he left Monique's house, but claims that he passed out. (4) 
Bianca and Fernando continued to watch movies until Fernando became tired. Since Fernando had
never stayed at Vanegas' house, Bianca showed him where he would be sleeping. Fernando was
found dead in the same position that Bianca last saw him the night before. His autopsy concluded
that he had "died as a result of the toxic effects of heroin." 

 Here, the evidence suggests that Vanegas organized the "cheese" into lines in the presence
of Fernando, and "snorted" a few lines with the aid of a straw. He passed the straw to Fernando and
watched as he "snorted" two lines of "cheese." Both actual and constructive delivery was involved
in this case, since Vanegas surrendered possession of the "cheese" while in the presence of Fernando,
who retrieved it. Based on Vanegas' own admissions, we conclude that a rational trier of fact could
find that, beyond a reasonable doubt, Vanegas knowingly delivered the "cheese" to Fernando. We
give due deference to the jury's determination of this matter and fail to find, even when viewing the
evidence in a neutral light, that confidence in the jury's verdict is undermined or shown to be clearly
wrong and unjust. See Rodriguez v. State, 31 S.W.3d 772, 774 (Tex. App.--Austin 2000), aff'd, 104
S.W.3d 87 (Tex. Crim. App. 2003) (in face of argument that State did not prove actual transfer of
cocaine, evidence legally sufficient where defendant chopped cocaine with razor blade, divided it
into lines, and watched as his fourteen-year-old daughter used rolled-up dollar bill to inhale cocaine). 
The evidence is legally and factually sufficient to support the verdict that Vanegas knowingly
delivered "cheese" heroin to a child.

(3) Ineffective Assistance of Counsel Has Not Been Shown

 Vanegas also contends he received ineffective assistance of counsel when counsel allowed
inadmissible extraneous-offense evidence to be placed in front of the jury. (5) The extraneous-offense
evidence refers to a no-billed manslaughter charge mentioned in the videotape interview of Vanegas
with Ellzey as follows:

 THE DETECTIVE: What did they do with that other case?


 THE WITNESS: What other case?


 THE DETECTIVE: That terrible case. 


 THE WITNESS: My little boy?


 THE DETECTIVE: The manslaughter case. 


 THE WITNESS: Oh, my little boy? They took to it [sic] the grand jury
and they dumped it. 


 THE DETECTIVE: They no billed it or what?


 THE WITNESS: Yeah, I guess. 


 THE DETECTIVE: Because I heard they was trying to give you some years
at first. 


 THE WITNESS: Yeah, at first, they was trying to give me some years,
but (unintelligible) on the case.


 . . . .


 THE DETECTIVE: But you don't -- tell me what was -- I haven't had time
to go research your case, but did you ever get arrested for that case and did you ever
have to post a bond for that case?


 THE WITNESS: No, none of that. 

 The State provided the jury with a transcript of the videotaped interview and played portions
of the interview. Both the videotape and transcript were offered and admitted for demonstrative
purposes only. Before the State played the portion referenced above, Vanegas' counsel asked to
approach the bench, the jury was removed, and counsel lodged Vanegas' objection: 

 Your Honor, I believe at this point in the videotape we're going to get into asking him
about a prior manslaughter case that was no-billed by the Grand Jury, and I would
argue that the prejudicial effect of the prior case isn't relevant to the case at hand at
this point. It's not relevant and it would be too prejudicial to talk about just the
manslaughter case and how that applies to what we're trying him for. 


Counsel also asked that page thirty-three of the transcript, containing the references, be removed
from the jury's possession. The State agreed to start the video after the point containing the
extraneous-offense evidence and also agreed to remove page thirty-three from the transcript. Before
the jury was brought in, a recess was taken. When the jury was seated, the State drew its attention
to page thirty-four of the transcript and did not play the portion referencing manslaughter. Vanegas
contends his counsel was ineffective because he forgot to ensure page thirty-three was actually
removed from the transcript copies in the jury's possession. 

 Whether a defendant received ineffective assistance of counsel is an assessment that must
be made according to the facts of each case. Ex parte Scott, 581 S.W.2d 181, 182 (Tex. Crim. App.
[Panel Op.] 1979). Any allegation of ineffectiveness must be firmly established in the record.
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999). Vanegas bears the burden of proving from the record, by a
preponderance of the evidence, that counsel was ineffective. Goodspeed, 187 S.W.3d at 392;
Thompson, 9 S.W.3d at 813; Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

 To aid our determination, we apply the two-pronged Strickland test handed down by the
United States Supreme Court. See Strickland v. Washington, 466 U.S. 668 (1984). Vanegas must
first show counsel's performance fell below an objective standard of reasonableness when
considering prevailing professional norms. See id. at 687-88. "This requires showing that counsel
made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the
Sixth Amendment." Sanchez v. State, No. 07-06-0435-CR, 2008 WL 2405889, at *1 (Tex.
App.--Amarillo June 13, 2008, no pet.) (mem. op., not designated for publication). Our review of
counsel's performance is highly deferential. Ex parte White, 160 S.W.3d 46, 51 (Tex. Crim. App.
2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). There is a strong presumption
that counsel's conduct fell within the wide range of reasonable professional assistance and that the
challenged action could be considered sound trial strategy. Strickland, 466 U.S. at 689; White, 160
S.W.3d at 51; Tong, 25 S.W.3d at 712. Therefore, we will not second guess the strategy of counsel
at trial through hindsight. Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State,
161 S.W.3d 142, 152 (Tex. App.--Texarkana 2005, pet. ref'd). Where the record is silent as to why
counsel failed to make an objection or take certain actions, we will assume it was due to any strategic
motivation that can be imagined, and the appellant will have failed to rebut the presumption that trial
counsel's actions were in some way reasonable. Mata v. State, 226 S.W.3d 425, 431 (Tex. Crim.
App. 2007); Garcia v. State, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); Fox v. State, 175 S.W.3d
475, 485-86 (Tex. App.--Texarkana 2005, pet. ref'd). In other words, we will not conclude that the
challenged conduct was deficient unless it was so outrageous that no competent attorney would have
engaged in it. Thompson, 9 S.W.3d at 808; Fox, 175 S.W.3d at 485-86. 

 The record demonstrates counsel objected as soon as he realized extraneous-offense evidence
would be introduced and requested removal of all materials containing such evidence. Although
counsel failed to see to it that page thirty-three of the transcript was actually removed, the record fails
to demonstrate why. We note that a recess was taken before the jury was seated. Counsel could
have communicated with the State and determined it would be best for the State to draw attention
to a subsequent page in the transcript, rather than have the jury notice the absence of a page in the
transcript and conclude there was evidence Vanegas was hiding. We will not second guess counsel
through hindsight. 

 In any event, failure to satisfy either prong of the Strickland test is fatal. Jaubert v. State, 74
S.W.3d 1, 9 (Tex. Crim. App. 2002). Thus, we need not examine both Strickland prongs if one
cannot be met. Strickland, 466 U.S. at 697. We find this fourth point of error can be overruled
based on analysis of the second prong of Strickland. To meet the second prong, Vanegas must show
that counsel's performance damaged his defense such that there is a reasonable probability the result
of the trial would have been different. See id. at 693; Tong, 25 S.W.3d at 712. It is not enough for
Vanegas to show that the errors had some conceivable effect on the outcome of the proceeding. See
Strickland, 466 U.S. at 693. We evaluate this factor while taking into consideration the totality of
representation and the particular circumstances of this case. Thompson, 9 S.W.3d at 813; Ex parte
Felton, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). 

 There is no evidence in the record demonstrating the jury saw or considered page thirty-three
of the transcript. It appears that counsel was playing the video while the jury had the transcript in
its possession; the jury could either watch the videotape, or follow along using the transcript. Since
the transcript was offered for demonstrative purposes only, it was not available during jury
deliberations, such that the jury could be influenced by it. The trial court instructed the jury that:

 if there is any testimony before you in this case regarding the defendant's having
committed an offense, if any, other than the offense, if any, alleged against him in the
indictment in this case, you cannot consider that testimony for any purpose unless
you find and believe beyond a reasonable doubt that the defendant committed such
other offense.


This Court can generally presume that the jury followed the trial court's instructions. Colburn v.
State, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Also, because we have concluded the evidence
was legally and factually sufficient to support the verdict, Vanegas has failed to demonstrate that
removal of any alleged deficiency would have caused a different result. Since Vanegas has not met
both prongs of the Strickland test, this point of error is overruled.

(4) The Judgment Should Be Reformed to Speak the Truth

 The judgment in this case lists the statute of the offense as "19.02 Health and Safety Code,"
even though no such statute exists. The parties agree that the judgment should be reformed to
reference Section 481.122 of the Texas Health and Safety Code as the statute addressing the correct
offense for which Vanegas was indicted and convicted. See Tex. Health & Safety Code Ann.
§ 481.122.

 Additionally, the judgment of conviction lists the degree of the offense as a second-degree
felony. While it is true that delivery of a controlled substance to a minor is a second-degree felony,
the degree of offense is increased by one level if a jury determines beyond a reasonable doubt that
the minor died as a result of introducing the controlled substance into the body. Tex. Health &
Safety Code Ann. §§ 481.122(c), 481.141(a) (Vernon Supp. 2008).

 The Texas Rules of Appellate Procedure give this Court authority to reform judgments and
correct typographical errors to make the record speak the truth. Tex. R. App. P. 43.2; French v.
State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); Peek v. State, No. 06-08-00069-CR, 2008 WL
5090344, at *1-2 (Tex. App.--Texarkana Dec. 4, 2008, no pet.) (mem. op., not designated for
publication) (reforming judgment to reflect correct degree of offense); Battle v. State, No. 06-07-00148-CR, 2008 WL 482343, at *3 (Tex. App.--Texarkana Feb. 25, 2008, no pet.) (mem. op., not
designated for publication) (reforming judgment to reflect proper statute under which defendant
should have been convicted); Gray v. State, 628 S.W.2d 228, 233 (Tex. App.--Corpus Christi 1982,
pet. ref'd). 

 We modify the judgment to reflect that Vanegas' conviction was under Section 481.122 of
the Texas Health and Safety Code, and was of a first-degree felony offense. (6)

 As reformed, we affirm the judgment of the trial court. 





 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 23, 2009

Date Decided: April 10, 2009


Do Not Publish

1. This case was transferred to this Court from the Fifth District Court of Appeals in Dallas as
part of the Texas Supreme Court's docket equalization program. We are not aware of any conflict
between the precedent of the Dallas Court and the precedent of this Court on any issue relevant in
this appeal. See Tex. R. App. P. 41.3.
2. The clerk's record contains a document bearing Vanegas' signature file-marked May 12,
2008, at 8:59 a.m. which recites, "Comes now Defendant in the above cause, at the time of entering
a plea of Not Guilty herein in open Court, and requests that the JURY assess the punishment herein."
3. Vanegas cites cases decided under Article 36.01 of the Texas Code of Criminal Procedure,
which requires the indictment to be read and a plea entered in the jury's presence. Tex. Code Crim.
Proc. Ann. art. 36.01 (Vernon 2007); see Hunt v. State, 994 S.W.2d 206, 210-11 (Tex.
App.--Texarkana 1999, pet. ref'd); Hazelwood v. State, 838 S.W.2d 647, 650-51 (Tex.
App.--Corpus Christi 1992, no pet.); State ex rel. Ownby v. Harkins, 705 S.W.2d 788, 790 (Tex.
App.--Dallas 1986, orig. proceeding). Since Article 36.01 was complied with, Vanegas' cited cases
do not apply.
4. Contrary to Ellzey's testimony that "[Vanegas] is the one that cut it," it appears from
Vanegas' interview and Bianca's testimony that the heroin was actually cut by Monique. 
5. An extraneous offense is defined as any "act of misconduct . . . that is not shown in the
charging papers." Coffel v. State, 242 S.W.3d 907, 909 (Tex. App.--Texarkana 2007, no pet.)
(quoting Rankin v. State, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996)).
6. We also note that the judgment provides that the sentence will run "concurrently." For this
offense, enhanced due to death or serious bodily injury of the recipient of the controlled substance,
a sentence cannot run concurrently. Tex. Health & Safety Code Ann. § 481.141(c) (Vernon
Supp. 2008). But because this case involves only one charge, and thus one sentence, we need not
address this error.