**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO.  09-13-00085-CR**
_____

**PATRICK OTTO BAKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-01-00528-CR**

**MEMORANDUM OPINION**

Patrick Otto Baker appeals his conviction for the felony offense of driving while intoxicated, enhanced by a prior felony conviction. On appeal, Baker raises two issues. First, he contends the trial court erred in denying his pre-trial motion to suppress, and second, he claims the conviction is invalid because the trial court failed to elicit an oral plea on the record from Baker in violation of the requirements of article 27.13 of the Texas Code of Criminal Procedure. *See* Tex.

Code Crim. Proc. Ann. art. 27.13 (West 2006). We overrule both issues and affirm the trial court's judgment.

## BACKGROUND FACTS

Around 2:10 a.m. on January 14, 2012, Conroe policeman Lieutenant Jon Buckholtz ("Officer Buckholtz" or "Buckholtz") witnessed a black Chevrolet Corvette traveling at an excessive rate of speed on Interstate 45 in Conroe, Texas. Buckholtz's radar indicated the vehicle was traveling ninety-three miles per hour in a sixty-five-mile-per-hour zone. Buckholtz pursued the speeding vehicle. At the suppression hearing, he testified that he had to drive about 130 miles per hour to catch the Corvette and initiate a traffic stop.

Officer Buckholtz further testified that after he activated his siren and overhead lights, he witnessed the Corvette weave in its lane, slow down to about ten miles per hour when exiting, and pass "numerous" locations where the driver could have stopped. Buckholtz testified that the Corvette's driver, later identified as Baker, appeared to be looking back at Buckholtz instead of pulling over, and that Baker passed an open roadway, failed to stop on the shoulder, and ultimately turned and stopped on a side street after exiting I-45.

Officer Buckholtz stated that after the vehicle stopped, he approached the vehicle on foot. Baker did not roll down his window, but instead raised his hands

up and shrugged his shoulders at Buckholtz as if to ask, by gesturing, "What do you want?" Buckholtz opened the car door and asked Baker for his driver's license and proof of insurance. At that time, Buckholtz testified that he immediately noticed "an overwhelming smell of cologne," and he could see a bottle of cologne on the floor board between Baker's legs. Buckholtz believed Baker was attempting to conceal the smell of an "alcoholic beverage" on his breath or the "smell of marijuana or some other type of contraband." Buckholtz also believed Baker placed the bottle of cologne between his legs during the stop, because the cologne bottle would not have otherwise remained in that location.

Baker's speech was slow and deliberate, and the officer noticed that Baker's eyes "were glassy and extremely red." Buckholtz further testified that Baker had difficulty locating his insurance card, that he handed the officer documents other than the insurance information, that it took Baker approximately seven minutes to locate his insurance card, that he stumbled slightly when he exited the vehicle, that after exiting the vehicle he leaned against the vehicle and used it "for a rest[,]" and that he appeared to sway when he was standing unassisted.

Officer Brett Irvine ("Officer Irvine" or "Irvine") also testified at the suppression hearing. Irvine arrived at the scene to assist Officer Buckholtz after the initial stop. From the time the stop occurred until the moment that Buckholtz

3

handed Baker the clipboard with a speeding ticket, camera footage demonstrated that approximately twenty minutes elapsed. At some point during the detention, information from the dispatcher indicated that Baker had a prior DWI. Buckholtz testified that Baker initially said he was coming home from work, but subsequently told Irvine that he was coming home from a party.

Buckholtz testified that after he handed Baker the citation that Baker "resisted" signing it and "became somewhat belligerent[.]" Baker finally signed the citation, but the officer continued his investigation. Buckholtz asked Baker "more than once" if he had "anything illegal, alcohol, weapons in the vehicle[.]" Baker refused to consent to a search of the vehicle. Buckholtz testified that Baker put his hands in his pockets, even though the officers had instructed him not to do so, and then Baker raised his hands in the air. Buckholtz then performed a *Terry* frisk on Baker. *See Terry v. Ohio*, 392 U.S. 1 (1968). Officer Buckholtz testified that when he did the *Terry* frisk, Buckholtz noticed for the first time a faint odor of alcohol over the smell of the cologne. Baker refused to take a field sobriety test and he was arrested for driving while intoxicated.

Baker filed a motion to suppress any evidence relating to the traffic stop, detention, and arrest. At the hearing on the motion to suppress, the trial court

4

considered the officers' testimony and the videotaped recordings of the traffic stop and arrest. The trial court denied Baker's motion.

The record indicates that after the trial court denied Baker's motion to suppress, Baker pleaded guilty under an open plea to the charge of felony driving while intoxicated, and elected to have the trial court assess punishment. The trial court adjudicated Baker guilty of felony driving while intoxicated. Baker pleaded true to an enhancement paragraph. The trial court sentenced Baker to ten years in prison and assessed a $1500 fine. The trial court suspended the imposition of the sentence and placed Baker on community supervision for ten years. Baker appealed.

MOTION TO SUPPRESS

In his first issue, Baker challenges the trial court's ruling denying his motion to suppress. Baker argues that although the initial stop was reasonable, his continued detention past the issuance of the citation for speeding was unreasonable and violated his Fourth Amendment right against unreasonable search and seizure, and any evidence obtained after that point was the product of an illegal detention. The Fourth Amendment to the United States Constitution, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, states that "'[t]he right of the people to be secure in their persons . . . against unreasonable . . .

5

seizures, shall not be violated.'" *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (quoting U.S. Const. amend. IV).

On a motion to suppress, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013); *Amador*, 275 S.W.3d at 878. However, once the defendant establishes the search or seizure was warrantless, then the burden shifts to the State to prove it was prompted by reasonable suspicion. *Abney*, 394 S.W.3d at 547. In reviewing a trial court's ruling on a motion to suppress, we use a bifurcated standard of review to evaluate the totality of the circumstances and to determine whether reasonable suspicion exists. "First, the courts must give 'almost total deference to a trial court's determination of historical facts that the record supports,' and second, the courts review *de novo* the trial court's application of the law to facts, which do not turn on credibility and demeanor." *Id.* At a suppression hearing, the trial judge "'is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony[.]'" *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *Amador*, 275 S.W.3d at 878. The trial court's ruling on a motion to suppress will be upheld if it is "'reasonably supported by the record and is correct under any theory of law

6

applicable to the case.'" *Amador*, 275 S.W.3d at 878-79 (quoting *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008)). In the case at bar, the trial court did not make explicit findings of fact, so we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing *Carmouche*, 10 S.W.3d at 327-28). Therefore, we assume the trial court implicitly concluded that the State carried its burden of proof of demonstrating under the totality of the circumstances that Buckholtz's continued detention of Baker for a DWI offense was reasonable. Our task is to "determine whether the trial court, in so concluding, abused its discretion." *Amador*, 275 S.W.3d at 879.

A police officer is permitted to stop and temporarily detain a person in order to conduct an investigation if the officer has a reasonable suspicion that an individual is violating the law. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (citing *Balentine*, 71 S.W.3d at 768). "Routine traffic stops are analogous to investigative detentions and are governed by *Terry v. Ohio*." *St. George v. State*, 197 S.W.3d 806, 815 (Tex. App.—Fort Worth 2006), *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007). "Thus, our framework for determining the reasonableness of an investigative detention based on a traffic stop is provided by

*Terry*, under which police officers may stop and briefly detain persons reasonably suspected of criminal activity on less information than is constitutionally required for probable cause to arrest." *Id.* (citing *Terry*, 392 U.S. at 21-22).

The State bears the burden of establishing the reasonableness of a warrantless arrest or temporary detention. *See Young v. State,* 283 S.W.3d 854, 872 (Tex. Crim. App. 2009) (arrest); *Ford*, 158 S.W.3d at 492 (detention). The two-pronged *Terry* analysis requires the court to determine the reasonableness based upon: (1) whether the officer's action was justified at its inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19-20; *Davis v. State*, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997). Baker concedes the initial stop was reasonable and that Officer Buckholtz's stop was valid because he saw Baker commit a traffic violation. *See Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Nevertheless, Baker contends that Officer Buckholtz's search and continued detention and subsequent arrest fails to meet the second prong in that it was not reasonably related to the speeding violation.

Under the second *Terry* prong, an investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500 (1983); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim.

8

App. 2004); *Davis*, 947 S.W.2d at 243. Once an officer concludes the investigation of the conduct that initiated the stop, a continued detention is permitted only if there is reasonable suspicion to believe another offense has been or is being committed. *Saldivar v. State*, 209 S.W.3d 275, 282 (Tex. App.—Fort Worth 2006, no pet.); *see also Davis*, 947 S.W.2d at 243-45. "'Reasonable suspicion' exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). After making a stop for a traffic violation, an officer may rely on all of the facts ascertained during the course of his or her contact with the defendant to develop articulable facts that would justify a continued detention. *Sims v. State*, 98 S.W.3d 292, 295 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd).

Relying on *Davis*, Baker argues that once "the initial purpose of the investigative detention – the speeding citation – had been completed[,]" Officer Buckholtz should not have continued the detention because a detention cannot last longer than is necessary to effectuate the purpose of the stop. *See Davis*, 947 S.W.2d at 245. Baker's reliance upon *Davis* is misplaced. In *Davis*, officers

stopped Davis on suspicion of driving while intoxicated. 947 S.W.2d at 241. Although the officers concluded Davis was not intoxicated, they continued to question and investigate him. *Id.* at 241, 245. The Court of Criminal Appeals held there was no reasonable suspicion to justify the continued detention because, once the officers determined Davis was not intoxicated, the purpose of the detention was complete and the continued detention was not based on articulable facts which, taken together with rational inferences from those facts, would cause a reasonable person to believe continued detention was justified. *Id.* at 245-46. Unlike the facts in *Davis*, Officer Buckholtz stopped Baker for speeding and thereafter observed various articulable facts during and after the traffic stop which, when considered together with rational inferences therefrom, justified the officers' continued detention of Baker and their suspicion that Baker was intoxicated.

This case is more analogous to the facts in *Amador*. In *Amador*, the defendant was stopped for speeding, and the evidence adduced at the suppression hearing from the testimony of the arresting officer was similar to the case at bar. *Amador*, 275 S.W.3d at 874-75. When the officer asked Amador for his license, he was slow to produce it, his speech was mumbled, and after he stepped out of the car, the officer noticed the smell of alcohol. *Id.* at 875, 879. Even though the video of the traffic stop in *Amador* seemed to contradict some of the arresting officer's

10

testimony in relation to the field sobriety test, the Court of Criminal Appeals reminded us that the trial court is the "sole factfinder at a suppression hearing, and it may believe or disbelieve all or any part of a witness's testimony." *Id*. at 875, 878. On review, the court should focus not on any one fact, but must consider the 'totality of the circumstances' facing the officers. *Id*. at 880.

Based upon the record and evidence adduced at Baker's suppression hearing, and the facts taken as a whole, we hold that the trial court could have reasonably concluded or inferred the following: at the time in question Baker was driving at a high rate of speed; Baker failed to pull over immediately; he fumbled for almost seven minutes trying to find his proof of insurance and handed the officer other items instead of his insurance; Baker's eyes were glassy; Baker put on cologne to cover up a smell; he swayed and stumbled; he showed mood swings; he initially would not sign the ticket and became belligerent; and he had ingested a quantity of alcohol and exhibited signs of intoxication. Officer Buckholtz testified that the purpose of the traffic stop was not only to issue Baker a speeding ticket, but also to investigate the reason for his excessive speed and his failure to pull over, and to determine if he was attempting to conceal contraband or was destroying evidence. Officer Buckholtz testified that he felt that the facts of the stop justified further detention to investigate a possible driving-while-intoxicated offense. Buckholtz

11

had training and expertise in recognizing signs of intoxication, and he articulated the following facts which led to his reasonable suspicion that Baker was intoxicated and to the subsequent arrest of Baker for a DWI: speeding in excess of twenty or twenty-fives miles over the speed limit, the time and place Baker was driving, slowing down to five or ten miles per hour to exit the freeway, failure to immediately pull over, the strong smell of cologne, slow movements and deliberate speech, red glassy eyes, inability to initially locate his insurance card and handing Officer Buckholtz other documents besides proof of insurance, the suspect's slight stumbling and swaying, failure to follow instructions, mood swings, failure to cooperate, and the smell of alcohol on Baker's breath.

In the case at bar, on the basis of the evidence at the suppression hearing and reasonable inferences therefrom, discussed above, the trial court could have reasonably concluded that, at the time and place in question, Officer Buckholtz had facts and circumstances within his knowledge sufficient to warrant a prudent person in believing that appellant had committed, in his presence, the offense of driving while intoxicated. The record in the case at bar supports the trial court's implicit finding that Officer Buckholtz had reasonable suspicion to extend Baker's detention and the trial court did not err in denying the motion to suppress. *See Amador*, 275 S.W.3d at 880; *Olivares v. State*, No. 01-11-00975-CR, 2013 Tex.

12

App. LEXIS 12206, **1, 6-8 (Tex. App.—Houston [1st Dist.] Oct. 1, 2013, pet. ref'd) (mem. op., not designated for publication) (While the officer initially stopped defendant for running a red light, the officer subsequently "learned articulable facts which, taken together with rational inferences from those facts, justified the defendant's continued detention."). Given the totality of the circumstances, the continued detention of Baker was not unreasonable. Accordingly, we conclude the trial court did not abuse its discretion in denying the motion to suppress. We overrule issue one.

## GUILTY PLEA

In his second issue, Baker argues that his conviction should be reversed because the trial court failed to elicit his guilty plea as required by the Texas Code of Criminal Procedure. Article 27.13 provides that "[a] plea of 'guilty' or a plea of 'nolo contendere' in a felony case must be made in open court by the defendant in person; and the proceedings shall be as provided in Articles 26.13, 26.14 and 27.02." Tex. Code Crim. Proc. Ann. art. 27.13. "If the plea is before the judge alone, same may be made in the same manner as is provided for by Articles 1.13 and 1.15." *Id.*

Baker contends for the first time on appeal that because the trial court did not satisfy the requirements of article 27.13, this Court should reverse his

13

conviction without requiring a harm analysis, and remand this matter to the trial court for a new trial. The State argues Baker failed to raise this complaint in the trial court, and therefore he has not preserved error. Although we held in *Costilla v. State* that this error can be raised for the first time on appeal, the Court of Criminal Appeals declined to address whether the complaint was procedurally barred. *See Costilla v. State*, 146 S.W.3d 213, 216 (Tex. Crim. App. 2004); *Costilla v. State*, 84 S.W.3d 361, 363 (Tex. App.—Beaumont 2002, *aff'd*). Assuming without deciding that Baker's complaint is not procedurally barred, we conclude that the record demonstrates substantial compliance with article 27.13, and there was no error.

Article 27.13 does not require an oral plea. *See Costilla*, 146 S.W.3d at 217 (Although "the better practice is to inquire of the defendant personally what his plea is," the statute does not require an oral plea.); *Shields v. State*, 608 S.W.2d 924, 927 (Tex. Crim. App. 1980). "[A]ny complaint arguing deviation from article 27.13 should be evaluated under the particular facts of that case to determine whether the trial court complied with the applicable law." *Costilla*, 146 S.W.3d at 217. Substantial compliance with article 27.13 occurs when a defendant in open court acknowledges the plea as his, regardless of whether an oral plea is actually entered. *See Bramlett v. State*, No. 06-11-00149-CR, 2012 Tex. App. LEXIS 3450,

14

at *5 (Tex. App.—Texarkana May 2, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Costilla*, 146 S.W.3d 213). Even when the trial court does not secure the defendant's spoken plea of guilty and does not interact with the defendant at the time of the plea, if the facts point to defendant's voluntary desire to plead guilty, article 27.13 has been satisfied. *See Costilla*, 146 S.W.3d at 217.

The record in this case indicates several occasions when Baker's guilty plea was discussed by Baker's attorney and by the trial court in open court and in the presence of Baker. Baker does not argue in his brief that he was confused or that he did not understand he was pleading guilty or that he was in any way coerced. There is no indication during the hearing that his plea was involuntary. For instance, after the trial court denied Baker's motion to suppress, State's counsel explained that "it was a dispositive plea, Judge; and I believe [Baker] has agreed to plea open upon the negative finding of the motion." Baker's attorney then stated that she would be reserving Baker's right to appeal the denial of the motion to suppress. When asked by the trial court if defendant had "an open plea to the Court[,]" defense counsel answered, "Yes, Your Honor[,]" and then agreed that a presentence investigation report would be obtained. Baker's attorney further explained that the trial court had previously denied the motion to suppress. The trial court stated, "Okay. So what are we doing?" Defense counsel answered, "It's

15

an open plea to the Court." The witnesses were sworn, and then the following

exchange transpired:

> THE COURT:    . . . You've pled guilty and I've accepted -- no, I haven't accepted a plea, have I?
>
> [Defense Counsel]: No, you have not, Your Honor.
>
> THE COURT:    Okay. Well, let's go ahead and talk about that. The allegation is driving while intoxicated, third or more. We've had the suppression hearing that I've ruled on. And so you're in front of me now with respect to a plea to the Court. And I'm assuming there is no agreed recommendation, is what I'm reading; and, of course, we had a dispositive motion. So does this preserve his right to appeal the dispositive motion ruling?
>
> [Defense Counsel]: It does, Your Honor.
>
>         . . . .
>
> THE COURT: Let's go ahead and get your client to sign there. I do have your signature.
>
> [Defense counsel]: He signed it, Your Honor. This is the waiver of appeal. That's why it's not signed.
>
> THE COURT:    Okay. He's fixing to sign it. Waive appeal as to -- he can appeal not his guilty plea, except to the extent that he has rights to appeal the ruling on the dispositive motion.
>
> [Defense Counsel]:  Yes, sir. On the certification --
>
> THE COURT: Oh, does it make it clear?
>
> [Defense Counsel]: It does, Your Honor.

16

. . . .

THE COURT: Yeah. Okay. With respect to punishment, though, he also does not have a right to appeal. If he loses on the substantive issues, then the punishment that I decide today, he has no right to appeal, correct or not correct?

[Defense Counsel]: Well, he can appeal -- what he gets to appeal is the written motion, the Court's ruling on the Motion to Suppress. If we are successful at the Court of Appeals, it will be remanded --

. . . .

THE COURT: But if you're not, then the punishment -- the actual punishment cannot be --

[Defense Counsel]: Correct, Your Honor.

. . . .

[Defense Counsel]: Correct. Because we're pleading open to the Court.

THE COURT: Okay. The Record is clear on that.

Baker then pleaded true to the enhancement paragraph and the trial court accepted the plea to the enhancement. The trial court questioned Baker regarding whether he would rather go to SAFPF for ten years or go to prison for ten years as recommended by the State. Baker explained he would "like to have the ten years [of] probation." The trial court then assessed Baker's punishment at ten years

17

imprisonment, a $1500 fine, court costs, restitution, and confinement in jail for ten days, but suspended the imposition of the sentence and placed Baker on community supervision for ten years.

The clerk's record includes "Admonitions to the Defendant for Plea to Court" signed by Baker, Baker's counsel, the assistant district attorney, and the trial judge. The admonitions include a paragraph entitled "Waivers, Consent, Judicial Confession & Plea Agreement" where Baker agreed he was "aware of the consequences of my plea," and he judicially confessed to the offense of driving while intoxicated—third or more. The admonitions signed by Baker also state that "[a] plea agreement exists in this cause" and that Baker "agrees to plead guilty" to the offense. A handwritten note on the form states, "Open Plea to the Court with no agreed recommendation after dispositive motion to suppress hearing[.]" The admonitions were signed on January 11, 2013—the same day the trial court discussed the plea with defense counsel and discussed punishment with Baker after Baker pleaded "true" to the enhancement. The scheduling order for the case includes a handwritten notation of "Sentencing after open plea" next to the date "1/11/13[.]" The docket sheet entry for January 11, 2013 reflects "Deft pres w/ Atty" and "Guilty Plea: 10 Yrs Comm Supervision[.]" The judgment, dated

January 11, 2013, and signed by the trial judge and by Baker, includes the following:

> The Defendant, having been duly arraigned, entered his plea of Guilty. It appearing to the Court that the Defendant was mentally competent and that his plea was free and voluntary, and the Court having duly admonished the Defendant as to the consequences of such plea and the Defendant persisted in entering his plea of Guilty. Therefore, the Court duly accepted the Defendant's plea.

The Texas Court of Criminal Appeals in *Costilla* clarified that substantial compliance with article 27.13 occurs when a defendant acknowledges the plea as his in open court, regardless of whether an oral plea is actually entered. *Costilla*, 146 S.W.3d at 214-217. Article 27.13 is satisfied, even when no oral plea is entered, if a defendant acknowledges the plea by stipulating to the evidence, signing plea admonishments, and by not making known at punishment that the plea was involuntary. *See Bramlett*, 2012 Tex. App. LEXIS 3450, at **4-6 (citing *Costilla*, 146 S.W.3d at 217). Although the record before us does not include Baker's oral statement on the record that he "pleads guilty to the offense of driving while intoxicated – third or more," an oral plea was not required, and all facts point to his knowing and voluntary desire to plead guilty thereto. *See Costilla*, 146 S.W.3d at 217. The interaction between Baker's attorney and the court, as well as the interaction between the court and Baker, confirms Baker understood he was

pleading guilty to the offense. *See Adkison v. State*, 762 S.W.2d 255, 259 (Tex. App.—Beaumont 1988, pet. ref'd) (Interaction between trial court and defendant indicated he fully understood the proceedings and plea.). We overrule issue two. Having overruled both of Baker's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 2, 2014
Opinion Delivered April 9, 2014
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.